IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
NORTHERN DIVISION

MARY McDOUGLE, Individually, and as
Administrator of the Estate of
Michael D. McDougle Sr., Deceased; and
the Estate of Michael D. McDougle Sr.                    PLAINTIFFS

VS.                                CIVIL ACTION NO. 3:17-cv-231 WHB-JCG

KEMPER CORPORATE SERVICES, INC. d/b/a
UNION NATIONAL LIFE INSURANCE COMPANY                    DEFENDANT

## OPINION AND ORDER

This cause is before the Court on the Motion of Defendant to Compel Arbitration and to Stay Proceedings Pending Arbitration. Plaintiff has not responded to the subject Motion, and the time period for so doing has expired. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds the Motion to Compel Arbitration is well taken and should be granted, and judicial proceedings should be stayed in accordance with 9 U.S.C. § 3.

### I. Factual Background and Procedural History

In August of 2010, Michael McDougle, Sr. ("Michael McDougle"), applied for a life insurance policy from Kemper Corporate Services, Inc., d/b/a Union National Life Insurance Company ("Union National"). As part of the application, Michael McDougle signed an "Acknowledgment of Arbitration Agreement", whereby he acknowledged,

*inter alia*: (1) the Policy for which he was applying contained a binding arbitration agreement and waiver of right to trial by jury, and (2) that any dispute related to the Policy would be decided by an arbitrator instead of a judge and/or jury. <u>See</u> Mot. to Compel Arbitration [Docket No. 4], Ex. 3. The Policy, which provided life insurance benefits in the amount of $10,000.00, was issued in September of 2010, and named Michael McDougle as the insured, and his mother, Mary McDougle ("Mary McDougle"), as the Policy owner and primary beneficiary. The subject Policy contains an "Arbitration Agreement and Waiver of Right to Trial by Jury", which provides, in part:

> This Arbitration Agreement and Waiver of Right to Trial by Jury requires that any dispute involving this Policy between the Company, and the insured, owner, beneficiary or any other party who has an interest as a claimant ("Claimant"), must be resolved through binding arbitration, this includes, but is not limited to, disputes regarding the following:
>
> > Whether a Policy Dispute must be arbitrated under this Arbitration Agreement;
> >
> > Interpretation of this Policy;
> >
> > Payment or denials of claims;
> >
> > Any claim alleging fraud, deceit, suppression, misrepresentation or omission of any material fact in the sale of the Policy;
> >
> > Any other matter arising out of or relating in any way to this Policy or the Claimant's relationship with the Company, its agents, servants, employees, officers, directors or affiliate companies.

> Any arbitration will be administered by the American Arbitration Association ("AAA") in accordance with:
>
> > The AAA's commercial dispute resolution procedures;
> >
> > The AAA's supplementary procedures for consumer-related disputes; and
> >
> > Any other applicable laws of the state in which this Policy was delivered.
>
> The results of arbitration are final and binding on the Claimant and the Company.... This means that the parties are giving up their rights to resolve all disputes in court, including the right to a trial by jury.

Id., Ex. 1, 13-14 (alterations in original).[1]

In November of 2014, Michael McDougle died as the result of head trauma and mixed drug toxicity. In April of 2017, Mary McDougle, individually and as the Administratrix of Michael McDougle's estate, filed a lawsuit in state court alleging that Union National had failed and/or refused to pay the benefits due and owing under the Policy. Based on the allegations in the Complaint, Mary McDougle seeks an undisclosed amount of actual and punitive damages on claims sounding in breach of contract, and bad faith refusal to pay insurance benefits. The case was removed to federal court on the basis of diversity of citizenship jurisdiction. As a review of the pleadings evidences that the parties are diverse, and it is apparent from the face of Mary McDougle's Complaint that the jurisdiction requisite is satisfied,

---

[1] The referenced page numbers reflect those assigned when the document was electronically filed.

the Court may properly exercise federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332.[2]  Union National has now moved to compel Mary McDougle to arbitrate her claims, and to stay judicial proceedings pending arbitration.  Mary McDougle did not respond to the subject Motion, and the time period for so doing has expired.

**II.  Discussion**

Under the Federal Arbitration Act ("FAA"):

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  To determine whether a contract "evidenc[es] a transaction involving commerce" for the purposes of the FAA, the United States Supreme Court has held that "control over interstate

---

[2]  Courts have found it apparent that bad faith denial of insurance claims have been shown to be worth more than $75,000 under Mississippi law.  See Lee v. Safeco Ins. Co. of Ill., 2012 WL 12882890, at *2 (S.D. Miss. Oct. 5, 2012)("Juries in Mississippi frequently award damages (compensatory and punitive) in excess of $75,000 in actions based on wrongful denial of insurance benefits.")(quoting Chambley v. Employers Ins. of Wausau, 11 F.Supp.2d 693, 695 (S.D. Miss. 1998)(citing Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990), Universal Life Ins. Co. v. Veasley, 610 So.2d 290 (Miss. 1992), Bankers Life and Cas. Co. v. Crenshaw, 483 So.2d 254 (Miss. 1985), Employers Mut. Cas. Co. v. Tompkins, 490 So.2d 897 (Miss. 1986)).

4

commerce reaches not only the actual physical interstate shipment of goods but also [extends to] contracts relating to interstate commerce." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 273-74 (1995). See also Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003)("[T]he FAA encompasses a wider range of transactions than those actually 'in commerce' - that is, 'within the flow of interstate commerce'", it also encompasses cases in which "the aggregate of the economic activity in question would represent 'a general practice subject to federal control', i.e. one that "bear[s] on interstate commerce in a substantial way.")(alterations in original)(citations omitted). Here, because the insurance Policy is a contract that is to be performed by individuals/entities in different states, and the Policy involves the interstate transfer of funds, the Court finds it involves interstate commerce as that term has been interpreted by the Supreme Court. See e.g. Mississippi Fleet Card, L.L.C. v. Bilstat, Inc., 175 F.Supp.2d 894, 898 (S.D. Miss. 2001)(finding that as the parties' agreement and attendant arbitration clause was entered into, and was to be performed by, citizens of different states, the agreement involved interstate commerce as that term is defined by FAA precedent). Accordingly, the Court finds the subject insurance Policy and the incorporated Arbitration Agreement involve interstate commerce as that term is applied to the FAA and, therefore, may be enforced under that statute. See Allied-Bruce,

5

513 U.S. at 273-74 (indicating that the term "involving commerce" should be construed liberally as meaning "affecting commerce."); Arce v. Cotton Club of Greenville, Inc., 883 F. Supp. 117, 119 (N.D. Miss. 1995)("Section 2's requirements are met where contractual activity facilitates or affects commerce, even tangentially.").

Next, to determine whether parties to an arbitration agreement should be compelled to arbitrate under the FAA, courts generally apply a two-step analysis. See e.g. Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996):

> The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts. In applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.

Id. (alterations in original)(citations omitted). Ordinarily, both steps are questions for the court. See Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir. 2003). In cases, however, in which "the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." Kubala

6

v. Supreme Prod. Servs., Inc., 830 F.3d 199, 201 (5th Cir. 2016) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995)).

> Thus, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step — an analysis of contract formation — as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause — that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

Id., at 202 (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010)).

As regards the first inquiry, i.e. whether the parties entered a valid arbitration agreement, courts are instructed to "apply ordinary state-law principles that govern the formation of contracts." Kaplan, 514 U.S. at 943; May v. Higbee Co., 372 F.3d 757, 764 (5th Cir. 2004). Here, there are no allegations in the Complaint concerning the validity of the Arbitration Agreement contained in the Policy. In addition, because Mary McDougle is the primary beneficiary under the Policy, she can be compelled to arbitrate in accordance with the Arbitration Agreement under Mississippi law. See e.g. American Family Life Assur. Co. of Columbus v. Biles, 2011 WL 4014463. at *10 (S.D. Miss. Sept. 8, 2011)(finding that third-party beneficiaries to an insurance policy, although not signatories to the arbitration agreement

7

therein, were nevertheless bound to arbitrate their claims under Mississippi law)(citing Adams v. Greenpoint Credit, LLC, 943 So.2d 703, 708 (Miss. 2006)(arbitration agreements can be enforced against non-signatories if such nonsignatory is a third-party beneficiary)(citing Smith Barney, Inc. v. Henry, 775 So.2d 722, 727 (Miss. 2001)); Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 336 (5th Cir. 2010)(observing that the Supreme Court has "made clear that state law controls whether an arbitration clause can apply to nonsignatories")(citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31 (2009)). Accordingly, the Court finds the Arbitration Agreement in the subject Policy is valid under Mississippi law. As discussed below, the issue of whether the Arbitration Agreement is enforceable is one that has been delegated to the arbitrator.

Having found that there exists a valid agreement between Union National and Mary McDougle, the Court next considers whether the subject Arbitration Agreement contains a delegation provision giving the arbitrator the primary power to rule on arbitrability. The Fifth Circuit has found that if an arbitration agreement contains a delegation provision, "the role of the federal courts is strictly limited — we must refer the claim to arbitration absent some exceptional circumstance." Kubala, 830 F.3d at 203. The subject Arbitration Agreement provides that any dispute including "whether a Policy dispute must be arbitrate under this Arbitration

Agreement" must be resolved through binding arbitration.  See Mot. to Compel Arbitration, Ex. 1, at 11.  Thus, unless Mary McDougle "challenge[s] the delegation provision specifically", the Court "must treat it as valid under FAA § 2, and must enforce it under FAA §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  Rent-A-Center, West, Inc., 561 U.S. at 72 (alterations in original).  Mary McDougle has not challenged the delegation provision, and the Court cannot find anything on the face of that provision that would render it unenforceable.

In sum, having found that a valid agreement to arbitrate exists between Union National and McDougle, and that the subject Arbitration Agreement contains a delegation provision under which the parties agreed to arbitrate arbitrability, the Court finds the Motion to Compel Arbitration should be granted.

In addition to seeking to compel arbitration, Union National has moved to stay litigation of the claims alleged against it in this action as authorized by the FAA.  Under 9 U.S.C. § 3, "the court in which [a] suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration ..., shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...".  Having found that Mary McDougle is required to arbitrate the claims she has alleged

9

against Union National in this case, the Court finds all proceeding in this case should be stayed pending arbitration. Additionally, as nothing remains to be litigated in this lawsuit, the Court will dismiss this case. Either party may move to re-open if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrator(s).

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant to Compel Arbitration [Docket No. 4] is hereby granted. As Mary McDougle is hereby ordered to arbitrate all of the claims she has alleged against Kemper Corporate Services, Inc., d/b/a Union National Life Insurance Company in this case, and as nothing remains here to be litigated, the Court will enter a Final Judgment dismissing this case. Either party may move to re-open if further judicial intervention is necessary to enforce the rulings of this Court, or to enforce the rulings of the arbitrator(s).

SO ORDERED this the 31st day of May, 2017.

<u>s/ William H. Barbour, Jr.</u>
UNITED STATES DISTRICT JUDGE